UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
SHARONE D. P.,

                Plaintiff,       <u>DECISION AND ORDER</u>
                                       1:21-CV-01030-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

    In February of 2019, Plaintiff Sharone D. P.[1] applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Joseph Albert Romano, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 18).

    This case was referred to the undersigned on October 25, 2022.  The parties, through counsel, submitted a Joint Stipulation in lieu of motions for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Procedure. (Docket No. 21). For the following reasons, the Commissioner is granted judgment on the pleadings and this case is dismissed.

## I.  BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on February 7, 2019, alleging disability beginning December 4, 2015. (T at 300-304).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on June 3, 2020, before ALJ Kiernan McCormack. (T at 33-66). Plaintiff appeared with an attorney and testified. (T at 41-46, 48-57, 63-64). The ALJ also received testimony from Christine DiTrinco, a vocational expert. (T at 46-48, 57-63).

### B.    *ALJ's Decision*

On June 30, 2020, the ALJ issued a decision denying the application for benefits. (T at 13-32).

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018 (the date last insured) and did not engage in substantial gainful activity between December 4, 2015 (the alleged onset date) and the date last insured. (T at 19).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 20.

The ALJ concluded that, as of the date last insured, Plaintiff's degenerative changes of the lumbar spine; degenerative changes of the cervical spine; osteoarthritis of the right knee status post arthroscopy; osteoarthritis of the left knee post arthroscopy; chronic obstructive pulmonary disease; obesity; fibromyalgia; lupus; peripheral neuropathy; and major depressive disorder were severe impairments as defined under the Act. (T at 19).

However, the ALJ found that, as of the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 20).

At step four of the sequential analysis the ALJ determined that, as of the date last insured, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she cannot climb; but can balance, stoop, kneel, squat, crouch, and crawl on an occasional basis; can reach overhead with both arms occasionally and in all other directions frequently; cannot work at jobs containing concentrated exposure to airborne irritants; can operate motor vehicles and heavy machinery occasionally; and can work at low stress jobs (defined as involving no more than simple, routine,

and repetitive tasks, with only simple work-related decisions and few, if any, workplace changes). (T at 22).

The ALJ concluded that, as of the date last insured, Plaintiff could not perform her past relevant work as a retail training manager or bookkeeper. (T at 30).

However, considering Plaintiff's age (44 on the date last insured), education (limited, but able to communicate in English), work experience, and RFC, the ALJ determined that, as of the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (T at 31).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between December 4, 2015 (the alleged onset date) and December 31, 2018 (the date last insured). (T at 32).  On December 15, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on February 4, 2021. (Docket No. 1).  The parties, through

counsel, submitted a Joint Stipulation in lieu of motions for judgment on pleadings on January 13, 2022. (Docket No. 21).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

    B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises four main arguments in support of her request for reversal of the ALJ's decision.  First, she challenges the ALJ's step five

analysis.  Second, Plaintiff argues that the ALJ's step two analysis was flawed.  Third, she contends that the ALJ erred in considering her need to use a cane to ambulate.  Fourth, Plaintiff challenges the ALJ's credibility determination.  This Court will address each argument in turn.

A.    Step Five Analysis

At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

Here, the ALJ determined that, as of the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (T at 31).

In reaching this conclusion, the ALJ relied on the testimony of a vocational expert, who opined that an individual with limitations consistent with Plaintiff's RFC could perform representative occupations that existed in significant numbers in the national economy as of the date last insured. (T at 31, 59-62).

Plaintiff challenges this conclusion, arguing that the ALJ failed to resolve conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles* ("DOT").

The Social Security Administration has taken administrative notice of the DOT, which is published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. *See* 20 CFR § 416.966 (d)(1).  Social Security Ruling 00-4p provides that when a vocational expert testifies regarding job requirements, the ALJ has "an affirmative responsibility to ask about any possible conflict between that [testimony] and information provided in the DOT …."  SSR 00-4p.

If there appears to be a conflict between the DOT and the vocational expert's testimony, the DOT is "so valued" that the ALJ is obliged to obtain a "reasonable explanation" for the conflict. *Brault v. SSA*, 683 F.3d 443, 446 (2d Cir. 2012)(citing SSR 004-p); *see also Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019).

In the present case, the ALJ found Plaintiff was limited to no more than occasional overhead reaching. (T at 22).  The vocational expert testified that a claimant with such a limitation could perform the representative occupations of document preparer, order clerk, and account clerk. (T at 60).  Plaintiff argues that this testimony conflicts with the DOT, which describes all three occupations as requiring frequent reaching.

Notably, the ALJ specifically asked the vocational expert about this issue.  The vocational expert resolved the conflict by explaining that while

all three occupations requiring frequent reaching, they could nevertheless still be performed by a person who could only perform occasional *overhead* reaching. (T at 61-62).  The vocational expert testified that she was relying on her professional experience in reaching this conclusion. (T at 62).

This colloquy (involving direct questioning by the ALJ and eliciting a specific explanation from the vocational expert) was sufficient to satisfy the duty of inquiry recognized by the Second Circuit in *Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019); *see Arias v. Kijakazi*, No. 21-CV-3118 (RWL), 2022 WL 3646003, at *15-16 (S.D.N.Y. Aug. 24, 2022)(ALJ satisfied duty to resolve apparent conflicts through specific queries to the vocational expert ); *Bellore v. Kijakazi*, No. 20-CV-2306(EK), 2022 WL 955134, at *4 (E.D.N.Y. Mar. 30, 2022)(same and collecting cases).

Plaintiff also argues, without supporting citation, that the representative occupations involve mental demands (*e.g.*, frequent changing of tasks, attaining precise standards, using precision measuring instruments) that are inconsistent with the mental limitations identified and recognized by the ALJ in the RFC determination.  (The RFC limits Plaintiff to low stress jobs - defined as involving no more than simple, routine, and repetitive tasks, with only simple work-related decisions and few, if any, workplace changes). (T at 22).

The vocational expert testified that a hypothetical claimant with these mental limitations could perform the representative occupations and testified that there was no conflict between the DOT and this aspect of her testimony.  (T at 59-60).

The representative occupations are described as having Specific Vocational Preparation (SVP)[3] scores of 2 and General Education Development (GED)[4] scores of 2 or 3. *See* DOT 249.587-018 (Document Preparer, Microfilming); 209.567-014 (Order Clerk, Food and Beverage); 205.367-014 (Charge-Account Clerk).

The majority of courts in this Circuit and elsewhere have concluded that the SVP and GED scores assigned to the representative occupations by the DOT are consistent with the ability to perform simple, low-stress, unskilled work. *See Cross v. Astrue*, No. 08-CV-0425 (VEB), 2009 WL 3790177, at *8 (N.D.N.Y. Nov. 12, 2009); *see also McCusker v. Comm'r of*

---

[3] The DOT defines SVP as the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  A job with an SVP-2 rating requires "[a]nything beyond short demonstration up to an including 1 month." https://occupationalinfo.org/appendxc_1.html#II

[4] According to the DOT, the GED score "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance".  Jobs involving GED scores of 2 or 3 require reasoning development consistent with applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and dealing with "problems involving a few concrete variables in and from standardized situations." https://occupationalinfo.org/appendxc_1.html#III

*Soc. Sec.*, No. 1:13-CV-1074 GLS, 2014 WL 6610025, at *4 (N.D.N.Y. Nov. 20, 2014)(collecting cases); *Haiss v. Berryhill*, No. 17CV8083 (VB)(LMS), 2019 WL 3738624, at *11 (S.D.N.Y. May 15, 2019); *Martinez v. Comm'r of Soc. Sec.*, No. 15-CV-3649 (RRM), 2017 WL 1155778, at *17 (E.D.N.Y. Mar. 27, 2017).

Accordingly, the Court finds no conflict between the vocational expert's testimony and the DOT regarding either reaching or mental functioning. The ALJ's step five analysis must be sustained.

B.    *Step Two Analysis*

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co workers and usual work situations." *Gibbs v. Astrue*, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l) (5).

In the present case, the ALJ concluded that, as of the date last insured, Plaintiff's degenerative changes of the lumbar spine; degenerative changes of the cervical spine; osteoarthritis of the right knee status post arthroscopy; osteoarthritis of the left knee post arthroscopy; chronic obstructive pulmonary disease; obesity; fibromyalgia; lupus; peripheral neuropathy; and major depressive disorder were severe impairments. (T at 19).

Plaintiff argues that the ALJ erred by failing to recognize her carpal tunnel syndrome as a severe impairment.

The ALJ recognized that there was evidence of a carpal tunnel syndrome diagnosis and treatment but found that the condition did not rise to the level of a severe impairment.  (T at 20).  The ALJ's decision was supported by substantial evidence.

The record does reference a diagnosis of, and some treatment for, carpal tunnel syndrome. (T at 20, 811-18, 2420).  However, EMG testing in July of 2018 indicated "mild sensory motor peripheral neuropathy," with no carpal tunnel syndrome.  (T at 3123).  Moreover, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a

condition "severe." *Coleman v. Shalala*, 895 F.Supp. 50, 53 (S.D.N.Y.1995).

Most fundamentally, there is substantial evidence to sustain the conclusion that Plaintiff does not have limitation in her ability to use her hands sufficient to constitute a severe impairment as defined under the Social Security Act.

Clinical examinations showed generally unremarkable findings, including full range of motion in the wrists and digits, with no tenderness, swelling, or atrophy. (T at 1230, 1237, 2187).

In July of 2016, Dr. Lisa Nason, an examining orthopedist, examined Plaintiff, including her wrists and hands, and described her physical capabilities as "full." (T at 2188).  Dr. John Denton, another examining orthopedist, made similar findings in February of 2018 and opined that Plaintiff could work "without restrictions." (T at 1862).

Dr. Julia Kaci performed a consultative examination in March of 2016. She found Plaintiff's hand and finger dexterity intact, with full grip strength bilaterally. (T at 553).  She assessed moderate limitation as to walking, lifting, carrying, pushing, and sitting, but found no limitation with respect to Plaintiff's ability to use her hands. (T at 554).

Dr. Kaci performed a second consultative examination in October of 2017.  Although this time she noted the diagnosis of carpal tunnel syndrome, Dr. Kaci's clinical findings regarding Plaintiff's hands were the same (hand and finger dexterity intact, with full grip strength bilaterally) and she again assessed no limitation in Plaintiff's use of her hands to perform basic work activities. (T at 770-71)  In April and May of 2018, Dr. Michael Cushner, a treating physician, opined that Plaintiff could perform constant fine manipulation and simple grasping. (T at 859, 867).

The Court, therefore, concludes the ALJ's conclusion that Plaintiff's carpal tunnel syndrome was not a severe impairment, as defined under the Social Security Act, is supported by substantial evidence.

### C.    Consideration of Cane Use

Dr. Kaci, a consultative examiner, described Plaintiff's gait as antalgic, noted that she was unable to walk on heels or toes, and indicated that Plaintiff "felt off balance."  (T at 769).  Dr. Kaci reported that Plaintiff had been using a cane for weightbearing and balance and opined that the cane was "medically necessary." (T at 769).  In a May 2017 treatment note, Dr. Cushner, a treating physician, reported that Plaintiff "continues to use a cane for ambulation." (T at 1431).

Plaintiff points to this evidence and contends that the ALJ did not properly account for her need to use a cane to ambulate.

The ALJ, however, expressly considered this issue and found Dr. Kaci's opinion regarding Plaintiff's need to use a cane unpersuasive. (T at 28). The ALJ's decision is supported by substantial evidence. No other medical provider indicated that the use of a cane was medically necessary.[5] Several medical opinions (Dr. Blanco, Dr. Cushner, Dr. Denton, Dr. Nason) described Plaintiff as capable of walking and standing at a level consistent with sedentary work (if not greater). (T at 859, 1758, 1862, 2188). Treatment notes described Plaintiff as demonstrating a normal gait, with no instability. (T at 572, 840, 854, 876, 878, 983, 1860).

Moreover, even assuming *arguendo* that Plaintiff does need a cane for weight-bearing and balance, she points to no evidence to support the argument that her need to use a cane would preclude her from performing the reduced range of sedentary work identified in the RFC determination. *Compare Podolsky v. Colvin*, No. 12 CIV. 6544 RA JLC, 2013 WL 5372536, at *17 (S.D.N.Y. Sept. 26, 2013)("Thus, while the use of a cane

---

[5] Although Dr. Cushner described Plaintiff as using a cane, he did not opine as to whether it was medically necessary. (T at 1431). The fact that a claimant is described as using a cane, without more, is insufficient to establish medical necessity. *See Podolsky v. Colvin*, No. 12 CIV. 6544 RA JLC, 2013 WL 5372536, at *16 (S.D.N.Y. Sept. 26, 2013).

may impact the ability of a claimant to do light or medium work, there was substantial evidence in the record for the ALJ to have concluded that Podolsky could perform sedentary work with his cane.") *with Lausell v. Comm'r of Soc. Sec*., No. 19 Civ. 2016 (SLC), 2021 WL 797074, at *16 (S.D.N.Y. Mar. 1, 2021)(remanding because ALJ failed to develop the record concerning use of a cane, which was "outcome-determinative" of whether claimant could work); *see also Parker v. Sullivan*, No. 91 CIV. 0981 (PNL), 1992 WL 77552, at *4 (S.D.N.Y. Apr. 8, 1992)(ALJ did not commit reversible error in finding that claimant could perform sedentary work notwithstanding need to use a cane).

### D.   Credibility

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other

evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: Her knees "give out" constantly and she cannot walk upstairs. (T at 50).  Lower back pain prevents her from walking more than 5-10 minutes. (T at 50).  She cannot

lift, look up, bend down, or reach overhead. (T at 50).  She is in constant, radiating pain. (T at 51).  She uses a cane and knee brace. (T at 51).  An inhaler and breathing machine are used for her respiratory ailments. (T at 52).  Chemicals, dust, and excessive heat are irritants. (T at 53).  She does not really socialize and isolates herself due to depression and anxiety.  (T at 53-54).  She lives with her son and is not able to perform household chores or shopping. (T at 55).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that Plaintiff's statements concerned in the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (T at 26).

Plaintiff challenges this conclusion, pointing, particularly, to her persistent efforts to seek treatment for her pain and symptoms.

While there is no question that Plaintiff suffers from pain and limitation the ALJ did not dismiss Plaintiff's subjective complaints and, in fact, found her limited to a reduced range of sedentary work. (T at 22).

"[D]isability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). "Otherwise, eligibility for disability benefits would take on new meaning." *Id.*

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living.  (T at 22-30).

 As discussed above, the ALJ relied on multiple medical opinions (Dr. Blanco, Dr. Cushner, Dr. Denton, Dr. Nason) finding Plaintiff was capable of sedentary work (if not greater). (T at 859, 1758, 1862, 2188).  The ALJ also referenced descriptions of Plaintiff's activities of daily living inconsistent with her claims of totally disabling pain, including the performance of household chores, exercising, shopping, and personal care. (T at 26, 417-19, 551, 768, 883, 879, 889, 892, 896, 985).

This is sufficient to sustain the disability determination under the deferential standard of review applicable here.  *See Stanton v. Astrue,* 370 Fed App'x 231, 234 (2d Cir. 2010)(stating that courts will not "second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling"); *Hilliard v. Colvin*, No. 13 Civ. 1942, 2013 U.S. Dist. LEXIS 156653, at *48 (S.D.N.Y. Oct. 31, 2013)(finding that ALJ "met his burden in finding [subjective] claims not entirely credible because [claimant] remains functional in terms of activities of daily living and the

objective medical evidence fails to support her claims of total disability based on pain"). The Court, therefore, concludes that the ALJ did not err in his credibility determination.

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner is GRANTED judgment on the pleadings and this case is DISMISSED. The Clerk is directed to enter final judgment and close the file.

Dated: February 13, 2023          *s / Gary R. Jones*
                                  GARY R. JONES
                                  United States Magistrate Judge